# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 25-cv-23565-BLOOM/Elfenbein

JOSHUA ZAMBRANO,
individually and on behalf of all others similarly

      Plaintiffs,

v.

WANDERU, INC.,

      Defendant.

_____/

## <u>ORDER ON MOTION TO DISMISS CLASS ACTION COMPLAINT</u>

**THIS CAUSE** is before the Court upon Defendant Wanderu, Inc.'s ("Wanderu") Motion to Dismiss Plaintiff's Class Action Complaint, ECF No. [16]. Plaintiff Joshua Zambrano filed a Response in Opposition ("Response"), ECF No. [21], to which Wanderu filed a Reply, ECF No. [24]. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, Wanderu's Motion is granted.

## I.   BACKGROUND

This action arises from a dispute between the parties over the purportedly excessive and deceptive fees Wanderu charges customers who purchase tickets for transportation to, from, or within Florida on Wanderu's website. Plaintiff is an individual consumer who purchased a round-trip ticket from Miami, Florida, to Orlando, Florida, on November 16, 2023, through Wanderu's website, https://www. wanderu.com/. ECF No. [1] at ¶ 13. "Wanderu is an online travel metasearch engine aggregating prices and available offerings by bus, train, ferry, and flight." ECF No. [16] at 3; ECF No. [21] at 6. Wanderu provides transportation options to customers, but it is not a common carrier. *See id.*

The Complaint alleges as follows: Wanderu overcharged Plaintiff and other similarly situated customers additional deceptive fees for transportation tickets in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). ECF No. [1] at ¶ 2. According to Plaintiff, Fla. Stat. § 817.36(1) provides that a "person or entity that offers for resale or resells any ticket may charge only $1 above the admission price charged therefor by the original ticket seller of the ticket for [] transactions [involving] passage or accommodations on any common carrier in this state." *Id.* (quoting Fla. Stat. § 817.36(1)(a)). Wanderu is a reseller of common carrier tickets in Florida yet still charges more than $1.00 in additional fees for tickets purchased on its website.[1] Because FDUTPA provides that a violation may be predicated on "'any law, statute, rule, regulation, or ordinance,' which proscribes such conduct in trade or commerce," Wanderu's fees in excess of the amount permitted by § 817.36(1)(a) constitutes a "*per se* violation" of FDUTPA's prohibition on "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." ECF No. [1] at ¶¶ 7, 30 (quoting Fla. Stat. § 501.204.).

In addition to illegally overcharging customers excess fees, Wanderu has violated FDUTPA by "hiding its fees in a 'taxes & fees' line-item." ECF No. [1] at ¶ 8. To demonstrate how Wanderu hides its fees, the Complaint walks through Wanderu's booking process. The customer begins by entering the departure and destination locations and the dates of travel. *See* ECF No. [1] at ¶ 15; *see* also Figure 1.

---

[1] Plaintiff alleges that Wanderu's additional fees typically range between $3.00 to $5.00.

Case No. 25-cv-23565-BLOOM/Elfenbein



**FIGURE 1**

The customer is then "taken to a screen which provides a list of transportation options." *Id.* at ¶ 16; *see* Figure 2.



Case No. 25-cv-23565-BLOOM/Elfenbein

**FIGURE 2**

After the customer selects a ticket, the customer is shown a ticket selection confirmation with an option to "Book" the ticket. ECF No. [1] at ¶ 17; *see* Figure 3.



**FIGURE 3**

Once the customer selects the tickets, the customer is presented with a new page prompting the customer to provide his or her contact information and passenger details. ECF No. [1] at ¶ 18. It is on this page that the customer sees for the first time that Wanderu is charging additional "Taxes and fees." *Id.*; *see* Figure 4.

Case No. 25-cv-23565-BLOOM/Elfenbein



**FIGURE 4**

When a consumer hovers over the "i" information mark to learn more about the purpose of the "Taxes and fees," Wanderu simply "explains that the 'Taxes and fees' 'cover any applicable taxes, reservation fees, and, if charged, carrier fees.'" ECF No. [1] at ¶ 19. However, Wanderu does not include a breakdown of the various fees and charges included in its "Taxes and fees" charge. *Id.*



**FIGURE 5**

As a result of the ambiguities in the "Taxes and fees" charge," Wanderu implies that some portion of the taxes and fees are charged by the government, when the reality is that the charge only comprises the service fees of Wanderu and the common carrier. ECF No. [1] at ¶ 20;[2] *see* Figure 5.

---

[2] To support the contention that there is no governmental entity charging additional taxes, Plaintiff alleges that when a customer seeks to purchase "the very same bus or train ticket for the very same route at the very same time from the common carrier directly, they are quoted a price without any taxes." ECF No. [1] at ¶ 21.

Case No. 25-cv-23565-BLOOM/Elfenbein



**FIGURE 6**

As seen in Figure 6 above, Wanderu charges customers an excess service fee that the customer would otherwise not have been charged if the customer had booked directly with the common carrier. *See* ECF No. [1] at ¶ 22. Indeed, even where the common carrier charges no fees at all, Wanderu still imposes a service fee more than the $1.00 limit provided under Fla. Stat. § 817.36. *See e.g.*, Figures 6 and 7.



**FIGURE 6**

Case No. 25-cv-23565-BLOOM/Elfenbein



**FIGURE 7**

The Complaint asserts a FDUTPA claim (Count I) and an Unjust Enrichment claim (Count II). Wanderu now seeks to dismiss the Complaint arguing that Plaintiff fails to state a claim under FDUTPA because Wanderu is not subject to § 817.36's $1.00 fee limitation, as Wanderu is not a reseller of tickets; there are no allegations of deceptive practices or actual damages; and Plaintiff fails to state a claim for unjust enrichment because there is an express contract between the parties governing the subject matter, precluding Plaintiff from seeking equitable relief for the purportedly excessive fees. *See generally* ECF No. [16].

Plaintiff responds that a plain reading of Fla. Stat. § 817.36 contemplates treating ticket aggregators like Wanderu as resellers. *See* ECF No. [21] at 10-11. Accordingly, because Wanderu is a reseller of common carrier tickets, its service fees in excess of $1.00 violate FDUTPA. Furthermore, Plaintiff contends that it has adequately alleged that Wanderu engaged in deceptive practices by labeling its services fees as both "Taxes and fees" and that he suffered actual damages because Wanderu's excessive fees decreased competition in the marketplace. *See id.* at 17, 23.

As for the unjust enrichment claim, Plaintiff maintains that the contract does not cover the same subject matter and therefore does not prevent Plaintiff from seeking equitable relief. *See id.* at 24. Moreover, even if the parties' contract covered Plaintiff's unjust enrichment claim, any

provision permitting Wanderu to charge more than $1.00 in additional fees is illegal and therefore unenforceable. *See id.*

## II.   LEGAL STANDARD

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555;

*see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

## III.   DISCUSSION

### A.  FDUTPA Claim

#### a.  Reseller Under FDUTPA

Wanderu argues that a plain reading of Fla. Stat. § 817.36 supports that the statute imposes restrictions only on the resale of tickets, not original ticket sales. *See* ECF No. [16] at 7. Wanderu maintains that it is not in the business of reselling tickets. Instead, Wanderu "aggregate[s] travel providers' offerings, allowing the consumer the opportunity to compare market offerings and then make an original purchase of a ticket from the travel provider, via Wanderu's website." *Id.* Wanderu asserts that "the fees, charges and/or taxes paid by the consumer are a direct pass-through to the travel provider," and that it simply "facilitates the reservation by offering a user interface to make the reservation with the Travel Provider[.]" *Id.* at 8. As such, Wanderu merely retains the "service charge assessed for using Wanderu's aggregator services" while "the balance of the purchase price is remitted to the travel provider." *Id.* Accordingly, because Wanderu is not in the business of reselling tickets, it argues that Fla. Sta. § 817.36 is inapplicable and may not serve as a basis for a claim under FDUTPA.

Plaintiff responds that Wanderu does resell tickets because it aggregates tickets that are for sale on other sites and then offers them for sale "again" on its site. ECF No. [21] at 10. According to Plaintiff, the "plain meaning of the term 'resell' encompasses third-party aggregators like Wanderu," as courts have rejected the theory that, for a party to "resell something, one must

purchase it first." *Id.* (quoting *Util. Cost Mgmt., LLC v. Freeman Expositions, Inc.*, 2016 WL 9343761, at *4 (C.D. Cal. Apr. 8, 2016) (internal quotations omitted)).

Plaintiff points out that § 817.36 does not define "the terms 'offer for resale,' 'resell,' or 'reseller,'" and therefore, the Court must engage in statutory interpretation to determine the meaning of those terms. *See id.* at 11. According to Plaintiff, the Court need only apply the plain and ordinary meaning of the words "resell" and "resale" to find that the statute covers "intermediaries that facilitate transactions like Wanderu [offers]." *Id.* To support that the term "reseller" should apply to Wanderu, Plaintiff explains Wanderu's business as follows:

> [B]us and train tickets are first "offered for sale" from the common carrier's website. After those tickets are initially offered for sale, Wanderu's "metasearch engine aggregat[es] prices and available offerings . . . 'from hundreds of travel companies.'" Mot. at 3. Wanderu then offers for sale those very same tickets again on its own website—[ ] at an inflated price. . .. In other words, [ ] the initial ticket listing on [the common carrier's] website is the first sale, and the subsequent aggregation and duplication of the ticket listing on the Wanderu website is the resale—i.e., "the act of selling again." *Dickenson*, 353 F.2d at 395.

*Id.* Given Wanderu's business model, Plaintiff contends the company is properly categorized as a reseller under the statute.

Plaintiff maintains the interpretation of the terms "resell" and "resale" is consistent with other provisions in § 817.36. Section 817.36 specifically carves out certain enumerated industries and entities from the $1.00 resale limitation. Those excluded groups include (1) certain travel agencies,[3] (2) online resellers who are authorized by the original ticket seller to resell the tickets, and (3) online resellers who disclose they are not the issuer or original seller of the ticket. Because

---

[3] To be an exempted travel agency, the agency must have an established place of business in Florida, and must be subject to Florida state, county, and city occupational license taxes.

there is no exception for online ticket aggregators, Plaintiff insists that it must necessarily follow that entities like Wanderu are resellers subject to the $1.00 fee limitation.[4]

As the parties agree that a plain reading of the terms "resell" and "resale" are outcome determinative as to whether Wanderu is subject to Fla. Stat. § 817.36, and those terms are not defined in the statute, the Court engages in statutory interpretation to determine the meaning of those terms. The Court presumes that the legislature "says in a statute what it means and means in a statute what it says." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992). Therefore, [t]he first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute." *United States v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006); *see In re Robb*, 669 B.R. 839, 843 (Bankr. S.D. Fla. 2025) ("Courts interpreting statutory text must begin—and, if possible, end—with the plain meaning of the statute."). Where "the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotation and citation omitted). So long as the language is not ambiguous, no further inquiry is necessary. *See Silva*, 443 F.3d at 797. Even when a statutory term is undefined, "the plain meaning of the text [generally] controls." *United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023).

One of the ways to determine the meaning of an undefined statutory term is to look to dictionaries. *United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023). Merriam-Webster Dictionary defines a "resale" as "the act of selling again usually to a new party." Resale, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/resale (last accessed January

---

[4] Plaintiff also makes a public policy argument suggesting that if the Court finds that Wanderu is not a reseller under the § 817.36, the Court would undermine the statute by allowing Wanderu to reap the benefits of operating as a travel agency while not paying the state, county, and city taxes that a brick and mortar travel agency is required to pay in order to charge fees in excess of $1.00. *See* ECF No. [21] at 15-16.

30, 2026). Black's Law Dictionary defines the term "resale" as "a retailer's selling of goods, *previously purchased*[,] to consumers or to someone else further down the chain of distribution." Resale, *Black's Law Dictionary* (12th ed. 2024) (emphasis added). Similarly, the term "resell" means "to sell something one has previously bought" or to "sell again." Resell, *Oxford English Dictionary*, Oxford UP, September 2025, https://doi.org/10.1093/OED/4808965302; Resell, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/resale (last accessed February 3, 2026); Resell, Dictionary.com, https://www.dictionary.com/browse/resell (last visited February 3, 2026). The definitions Plaintiff offers for these terms are virtually the same as those in the dictionaries identified. Plaintiff asserts that "[t]he common meaning of resale is the act of selling again," while the "definition of the word resell is to sell again." ECF No. [21] at 11 (internal citations and quotations omitted). As is evident by each of these definitions, for an entity to resell goods, the goods must have been previously sold.[5] Indeed, the prefix "re" literally means to do again. Thus, without an initial sale, the goods cannot be sold again as the selling of previously unsold goods would simply be an initial sale.

Despite the ordinary meaning of the term, Plaintiff argues that Wanderu "resells" tickets that the common carriers first "sell" on their own websites. For Plaintiff to be correct that Wanderu resells tickets, Wanderu would first have to purchase the tickets from the common carriers; otherwise, the carriers would simply be *offering* to sell[6] rather than selling the tickets. Wanderu, however, merely provides an aggregation service where it lists tickets available for purchase across

---

[5] The only case Plaintiff cites to support his contention to the contrary is a federal district court decision in California involving an unrelated issue. *See* ECF No. [21] at 10 (citing *Util. Cost Mgmt., LLC v. Freeman Expositions, Inc.*, 2016 WL 9343761, at *4 (C.D. Cal. Apr. 8, 2016)).

[6] To sell something is "to transfer goods to or render (services for another in exchange for money; dispose of to a purchaser for a price." Sell, *Dictionary.com*, https://www.dictionary.com/browse/sell (last accessed February 3, 2026).

carriers. The fact that Wanderu technically offers the tickets for sale only after they are made available on a common carrier's website does not mean Wanderu is *reselling* those tickets, as Wanderu does not purchase those tickets. Except for the service fee Wanderu charges for its aggregation service, all other "fees, charges, and/or taxes paid by the consumer are a direct pass-through to the travel provider." ECF No. [16] at 8.[7] "The Wanderu Service only facilitates the reservation by offering a user interface to make the reservation with the Travel Provider." *Id.* (quoting the disclosures on www.wanderu.com). Indeed, if a customer did not want to pay for the benefits of Wanderu's aggregation service, the customer could just as easily log onto the common carrier's website and buy the exact same ticket directly from the common carrier. Therefore, because Wanderu and the common carrier are offering for sale the same original ticket at the same time, and at no point does Wanderu purchase tickets before it posts those tickets on its website, Wanderu is not selling the tickets "again." Accepting Plaintiff's interpretation of the terms resale and resell would not only run contrary to the plain meaning of the words, but would lead to an absurd result where an original seller would be subject to § 817.36 any time the original seller made tickets available for purchase in more than one place at any given point in time.

As such, the Court finds that a plain reading of Fla. Stat. § 817.36 demonstrates that Wanderu neither "offers for resale or resells" tickets for "[p]assage or accommodations on any common carrier in this state." Fla. Stat. § 817.36. Because the Court finds that the plain language of the statute is dispositive, no further analysis is necessary or proper. *See Birnholz v. 44 Wall St. Fund, Inc.*, 880 F.2d 335, 341 (11th Cir. 1989), *certified question answered*, 559 So. 2d 1128 (Fla.

---

[7] While Plaintiff disagrees with Wanderu's characterization that it is a pass-through seller, Plaintiff agrees that "consumers can buy bus or train tickets from common carriers like Red Coach, Greyhound, Flixbus, AmTrack, or Jet Set Express" on Wanderu's website. ECF No. [21] at 8. Therefore, it appears that Plaintiff is simply quibbling over labels as opposed the nature of Wanderu's business.

1990). Therefore, since the plain meaning of resale and resell does not cover tickets *offered* for sale on search aggregator websites, Wanderu is not subject to § 817.36, and consequently, Plaintiff's allegation that Wanderu charges service fees more than $1.00 over the original ticket price is insufficient to plausibly establish a FDUTPA violation.

### b.   Deceptive Practices and Actual Damages Under FDUTPA

Wanderu argues that Plaintiff's allegations of deceptive fees do not plausibly establish a FDUTPA claim either. Wanderu explains that a viable FDUTPA claim requires a showing of "1) a deceptive act or unfair trade practice; 2) causation; and 3) actual damages. ECF No. [16] at 8. To satisfy the first element, Wanderu contends that a plaintiff must establish that there was a "representation, omission, or practice that [ ] likely [ ] misle[d] the consumer acting reasonably in the circumstances, to the consumer's detriment." *Id.* (quoting *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007)). According to Wanderu, Plaintiff has not carried his burden as to the deception element because Plaintiff does not "allege that the process of viewing pricing, locations, and schedules for travel providers on Wanderu's website, and then making a purchase from a travel provider on Wanderu's website, even incurring a service fee from Wanderu, was likely to mislead a reasonable consumer." *Id.* at 9. Wanderu points out that where a defendant has provided accurate pricing information about a transaction (as is the case here), a reasonable consumer would not overlook such information and, as such, any claim of deception is rebutted.

Wanderu further argues that Plaintiff has not adequately alleged the actual damages element because Plaintiff has not established "that the market value of the product delivered was less than the value of the product as it should have been delivered according to the contract of the parties." *Id.* Wanderu maintains that there is no contention that Plaintiff did not receive exactly what he paid for when he purchased his ticket on Wanderu's website. Accordingly, there is no

factual basis to plausibly believe Plaintiff was injured, as he received the benefit of the bargain. *Id.*

Plaintiff responds that he has satisfied the deception element by alleging that Wanderu claims to charge "Taxes and fees" while never charging the customer any tax. By never giving the customer a breakdown of the fees, Plaintiff contends the ambiguity creates a "net impression" that at least some of the taxes and fees include charges from the government, rather than just a service fee from Wanderu. ECF No. [21] at 18.

As for the actual damages issue, Plaintiff contends that he need not show that the market value of the product delivered was less than the value of the product as it should have been delivered, as that is just one means of demonstrating actual damages, not the exclusive one. *Id.* at 23. Plaintiff argues he may show actual damages by alleging that a defendant's misrepresentations artificially inflated the market price by reducing price competition from other companies that sell the same products or services. *Id.*

The Court finds that, even assuming Wanderu's labeling of its service fee charge as "Taxes and fees" constituted a deceptive practice, Plaintiff has failed to adequately allege actual damages necessary to establish his FDUTPA claim. Plaintiff cites to out-of-circuit federal district court decisions to argue that actual damages need not only be established by showing that "the market value of the product delivered was less than the value of the product as it should have been delivered." *See id.* (citing *Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 562, 581-82 (S.D.N.Y. 2024); *Mansfield v. StockX LLC*, 802 F. Supp. 3d 1143, 1152-53 (N.D. Cal. 2025)). However, Plaintiff completely ignores Florida case law addressing the specific statute in question. "In the context of FDUTPA, 'actual damages' are defined as 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the

condition in which it should have been delivered according to the contract of the parties.'" *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. 3d DCA 2010) (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984) and citing *Urling v. Helms Exterminators, Inc.*, 468 So.2d 451, 454 (Fla. 1st DCA 1985)); *Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. 1st DCA 2012) (same). Thus, if a plaintiff cannot show that he or she has been denied the benefit of the bargain, the plaintiff's FDUTPA claim necessarily fails. *See Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019). Here, there is no allegation that Plaintiff did not get the full benefit of the bargain. Not only did Plaintiff receive the ticket he intended to purchase, *see* ECF No. [1] at ¶ 13, but he also received the benefit of using Wanderu's aggregation services when he selected his ticket. Plaintiff provides no allegations suggesting that he paid for a good or service that he did not receive. Indeed, the only purported harm is that Wanderu represented to Plaintiff that he would have to pay taxes and fees on the ticket, but he was only charged a service fee. Those allegations plainly do not establish the actual damages element and, as such, Plaintiff's FDUTPA claim must be dismissed.

### c.  Shotgun Pleading

Even if Plaintiff had adequately alleged that Wanderu engaged in deceptive practices sufficient to establish a FDUTPA claim, Plaintiff's claim would still need to be dismissed on shotgun pleading grounds.[8]

"A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading [violates Rule 8(a)(2) and] constitutes a 'shotgun pleading.'" *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x. 274, 277 (11th Cir. 2008) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1128-29 (11th Cir. 2001)). Such unclear pleadings "exact an intolerable

---

[8] A "District Court retains authority to dismiss a shotgun pleading on that basis alone." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018).

toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018) (quoting *Cramer v. Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997)). As such, "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)

The Eleventh Circuit has identified four types of shotgun pleadings, the "unifying characteristic" of which being that all shotgun pleadings "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The first and "most common type" of shotgun pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. The second type of shotgun pleading is the complaint that is "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Third is the pleading "that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1323. Fourth is the pleading that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

Here, Plaintiff commits the third sin—commingling multiple causes of action into a single claim. While Plaintiff contends that he is only asserting one FDUTPA claim, he combines two unrelated theories of liability into one cause of action. *See, e.g., Coney v. Royal Caribbean Cruises, Ltd.*, No. 22-CV-24003, 2023 WL 12148531, at *2 (S.D. Fla. July 28, 2023) (finding that "an

'attempt[ ] to cram multiple, distinct theories of liability into one claim,' . . . qualif[ied] as a shotgun pleading." (quoting *Ortiz v. Carnival Corp.*, No. 20-24838-CIV, 2020 WL 6945958, at *2 (S.D. Fla. Nov. 25, 2020)). Plaintiff's theory of liability based on deceptive charging practices is a completely different theory than the one based on the overcharging of customers. Indeed, Plaintiff concedes as much. *See* ECF No. [1] at ¶ 8 ("Wanderu's other practice of hiding its fees in a 'taxes and fees' line-item is also independently a deceptive trade practice under FDUPTA[.]"). Therefore, although both theories of liability are based on purported FDUTPA violations, they are distinct causes of action that must be plead in separate counts. If Plaintiff seeks to file an amended complaint, he must separately plead his FDUTPA claims.

### B.  Unjust Enrichment Claim

Wanderu also moves to dismiss Plaintiff's Unjust Enrichment claim. Wanderu points out that "[u]njust enrichment is an equitable remedy only available in the absence of any legal remedy." ECF No. [16] at 10. Therefore, where an express contract exists that would entitle the plaintiff to money damages, the plaintiff is foreclosed from pursuing an equitable remedy such as unjust enrichment or quantum meruit. Accordingly, because the Complaint establishes that an express contract exists between the parties, Plaintiff's unjust enrichment claim necessarily fails. *Id.* at 11.

Plaintiff responds that his acceptance of the "Terms and Conditions" did not create an express contract governing the subject matter in this case. ECF No. [21] at 24. Plaintiff argues that his "unjust enrichment claim is predicated on the fact that the fees Wanderu charged 'exceeded $1.00 beyond the total amount of the ticket[,]'" whereas Wanderu's Terms and Conditions simply provides "that 'Wanderu may charge a service fee,' and that 'this service fee may vary.'" *Id.* (quoting *Terms & Conditions*, WANDERU, https://www.wanderu.com/enus/terms-and-conditions/ (updated May 28, 2019)). Therefore, because the Terms and Conditions provision does

not provide the precise amount the Wanderu's service fee would cost, Plaintiff maintains the contract does not foreclose an unjust enrichment claim based on Wanderu's allegedly misleading fee disclosures. *See id.*

Furthermore, even if the Terms and Conditions did adequately cover the subject matter raised by Plaintiff in his Unjust Enrichment claim, Plaintiff argues that Wanderu may not convert an otherwise illegal fee into a legal one by way of contract. *See id.* According to Plaintiff, because Fla. Stat. § 817.36 sets a $1.00 fee cap, any fee charged in excess of $1.00 is still illegal regardless of whether the parties have entered a contract stipulating otherwise. Therefore, the Court "ought not to enforce the illegal term[.]" *Id.*

As Wanderu correctly points out, unjust enrichment is an equitable claim that is only available where an express contract concerning the same subject matter *does not* exist. *See e.g.*, *Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So. 3d 424, 430 (Fla. 3d DCA 2022) ("[I]t is well settled that a plaintiff 'cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists.'") (quoting *Fulton v. Brancato*, 189 So. 3d 967, 969 (Fla. 4th DCA 2016)); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010) ("No cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract."). Here, there is no dispute that an express contract exists between the parties—i.e., the Terms and Conditions.[9] Therefore, the only question is whether the Terms and Conditions covers the subject matter at issue in Plaintiff's Unjust Enrichment claim.

---

[9] To purchase a ticket utilizing Wanderu' website, the purchaser must first affirmatively check a box accepting Wanderu's Terms and Conditions. *See* ECF No. [16] at 11. As such, the Terms and Conditions are necessarily a part of the contract.

The Court rejects Plaintiff's argument that the Terms and Conditions portion of the parties' contract does not cover the subject matter at issue here simply because the Terms and Conditions do not include the precise amount Wanderu charges as a fee. The Terms and Conditions clearly cover Wanderu's service fees. Plaintiff concedes that the Terms and Conditions states that "Wanderu may charge a service fee," and that "[t]his service fee may vary." *Id.* at 24. Plaintiff fails to explain why it is significant that there is no sum certain rate included. While Plaintiff insists that this Court adopted the same rationale for denying a motion to dismiss in *Fruitstone v. Spartan Race, Inc.*, 464 F. Supp. 3d 1268 (S.D. Fla. 2020), that case is clearly distinguishable. In *Fruitstone*, there was no dispute that the waiver contained the terms and conditions of the parties' contract. This Court ultimately allowed the unjust enrichment claim to proceed because the fee provision was not incorporated into the waiver and it was unclear whether the fee language was considered a part of the waiver itself. *See id.* at 1291. Here, however, there is no dispute that the fee provision is part of the Terms and Conditions. *See* ECF No. [21] at 21. Indeed, Plaintiff concedes as much. *See id.* Accordingly, *Fruitstone* does not alter the Court's conclusion that the parties' contract in this case concerns the same subject matter as Plaintiff's instant unjust enrichment claim.

Plaintiff's argument that the parties' contract is not enforceable because it contains an illegal term fares no better. Plaintiff's theory that the fee provision is illegal hinges on the assumption that Wanderu is a reseller who may not charge more than $1.00 over the original ticket price under § 817.36. However, because the Court had already determined that Wanderu is not a ticket reseller and is therefore not subject to § 817.36, Wanderu's fees do not violate the statute and are therefore not illegal. Accordingly, the Terms and Conditions Plaintiff accepted when he purchased his ticket forecloses him from seeking an equitable remedy here.

### IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    Wanderu's Motion to Dismiss, **ECF No. [16]**, is **GRANTED**.

2.   Plaintiff's Complaint, **ECF No. [1]**, is **DISMISSED WITHOUT PREJUDICE**.

3.   Plaintiff shall file an Amended Complaint no later than **February 19, 2026**. If Plaintiff

     fails to file an Amended Complaint by the stated deadline, the Clerk of Court shall

     close this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 5, 2026.

_____

**BETH BLOOM**

**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record